IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10CR13-2 |
| | ) | |
| STEPHEN ANTHONY MILLER | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendant Stephen Anthony Miller's pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Doc. #78]. Miller claims that his attorney's ineffective assistance, his thirteen years in custody, a change to his career offender status, a sentencing enhancement for the use of a firearm, his age at the time of the instant offense, his rehabilitation, and his strengthened family ties constitute extraordinary and compelling reasons for release. And, according to Miller, the factors from 18 U.S.C. § 3553(a) further support granting his requested relief. The Government opposes Miller's motion. For the reasons stated below, his motion is denied.

Miller was sentenced to 327 months' imprisonment – 240 months for each of two Hobbs Act robberies (to be served concurrently) followed by 87 months for brandishing a firearm during the first robbery. "The court may not modify a term of imprisonment once it has been imposed except", as is relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(c)(1)(A). But "§ 3582(c)(1)(A)'s threshold requirement is non-jurisdictional and thus subject to waiver." United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021). The Government concedes that Miller has complied with this threshold requirement. Therefore, the analysis proceeds to the next step.

Miller must meet his burden of showing that extraordinary and compelling reasons warrant a sentence reduction. See 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (finding "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," "empower[ing]" courts "to consider any extraordinary and compelling reason for release that a defendant might raise") (citation omitted); U.S. Sentencing Guideline § 1B1.13, Application n.1 (providing circumstances found to be extraordinary and compelling) cited in McCoy, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants").

As an initial matter, of the legal arguments Miller advances in support of his motion, only the change in his career offender status is meritorious as discussed below, infra 3-4. He argues that his counsel was ineffective at sentencing and afterwards when he told Miller he had "no chance of appealing". But Miller recognizes that a § 2255 motion on the matter "is [now] clearly time barred". Although he contends that the discovery of his right to appeal was "too late"

(without identifying the date of his discovery), he has nevertheless filed two motions pursuant to § 2255. The first was filed in 2016 (which he authorized his appointed counsel to withdraw). The second was filed in 2019 (which was dismissed without prejudice to Miller's promptly filing a corrected motion on the proper § 2255 forms which he failed to do). Neither motion mentions ineffective assistance of counsel, and Miller has presented nothing to suggest that he just now learned of his appeal rights (and certainly any argument that his counsel was ineffective at sentencing is based on events of which Miller was a part and could have pursued on appeal or in a timely § 2255 motion).

Miller also claims that his five-level enhancement for possession of a firearm during a crime of violence was double counting "for the same conduct". However, Miller received the enhancement on Count Three, the Hobbs Act robbery conviction that did not have an associated § 924(c) conviction. He did not receive a firearm enhancement for Count One, the Hobbs Act robbery with which his § 924(c) conviction is associated.

To the extent that Miller contends that his Hobbs Act robbery conviction cannot support the § 924(c) conviction because Hobbs Act robbery is not a crime of violence for purposes of that statute, he is mistaken. See United States v. Mathis, 932 F.3d 242, 266 (4th Cir. 2019).

However, as the Government recognizes, Miller's Hobbs Act convictions are not crimes of violence under the Sentencing Guidelines and, therefore, Miller would not be a career offender were he sentenced today. See United States v. Green,

3

996 F.3d 176, 184 (4th Cir. 2021). The consequence is a significant difference in his Guideline range, likely approximately ten years.

Yet, whether the rest of Miller's story is part of the analysis for extraordinary and compelling reasons or § 3553(a) or both, it forecloses relief. Indeed, he was just nineteen years old when he committed the robberies underlying his imprisonment (and even younger when he committed the other felonies in his criminal history). But, despite what Miller says, his lawyer and the Court would have "had the benefit of the social science research" at the time of his sentencing that explained that "the brain does not cease to mature until the early 20s in those relevant parts that govern impulsivity, judgment, planning for the future, foresight of consequences, and other characteristics that make people morally culpable". Adam Ortiz, Am. Bar Ass'n, Cruel and Unusual Punishment: The Juvenile Death Penalty: Adolescence, Brain Development and Legal Culpability (Jan. 2004), available at https://www.ojp.gov/ncjrs/virtual-library/abstracts/cruel-and-unusual-punishment-juvenile-death-penalty-adolescence.[1] Nevertheless, the violent nature of Miller's prior criminal conduct (and of his underlying offenses as explained below) concerned the Court and, among other factors, informed his sentence.[2]

---

[1] Miller's counsel did argue for a downward departure under § 4A1.3(b) of the Guidelines, contending that Miller's career offender status was driven by the felony convictions he received "while under the age of 18, below the federal juvenile age." (Position of Def. Regarding Sentencing Factors.)

[2] In his § 3582(c)(1)(A) motion, Miller also describes his childhood, which the Court considered in determining Miller's sentence.

4

On June 14, 2009, Miller and his co-defendant David Hill robbed the Quality Mart in Kernersville.³ Upon entering the store, Hill stated, "Get the f*** on the ground" as he held a revolver that had the hammer action locked back in a pre-firing ready position. Miller jumped over the counter, confronted the store clerk, and ordered him to open the register. While making these demands, Miller punched the clerk in the face, then forcibly moved the clerk aside and removed the money from the register. Miller told the clerk, "Show me where the f***ing safe at." After the clerk pointed Miller to the safe, Miller ordered, "Open this s*** up, Open this f***ing s*** up." But, after the clerk told Miller he could not open the safe, Miller struck the clerk in the face several times, causing the clerk to fall to the floor. When the clerk said he did not know which key opened the safe, Miller responded, "Do I have to hit you again?" Customers arrived at the store, but before Miller and Hill left, Miller reached into the clerk's pockets and stole his wallet. He then struck the clerk again in the face three times and yelled, "Stay the f*** right there, don't f***ing move." Miller and Hill confronted a female customer as they left the store, and Hill pointed a gun directly at her and said, "Get the f*** outta here." He also pointed the gun at two other witnesses as he and Miller ran from the store. When the store clerk was interviewed by police the next day, he was visibly shaken and staggering. He died ten days later of cardiac

---

³ These facts are taken from the Offense Conduct described in Miller's Presentence Report which was adopted without change. See Presentence Report ¶¶ 6-10; Statement of Reasons.)

5

arrest, and, although the coroner determined that the beating was not the direct cause of death, it was a contributing factor.

Eight days after robbing the Quality Mart, Miller and Hill robbed the Pantry Shop #5 in Thomasville on June 22. Surveillance footage showed that one of them held two store clerks at gunpoint while the other defendant jumped over the counter and removed money from the register. The store clerks were made to lie on the floor before Miller and Hill left the store.

Unfortunately, Miller's record while in the Bureau of Prisons belies his contention that he "has matured since his incarceration" and "redirected his life in a positive and production direction." He characterizes his disciplinary infractions as "minor" and occurring at the "early stages of his incarceration". But, according to his Inmate Discipline Data record that he and the Government submitted, among his sixteen infractions (the most recent of which was in February 2022) are the October 29, 2021 possession of a dangerous weapon described as a "5.5" sharpened metal weapon" found in his living quarters,[4] the September 12, 2021 assault without serious injury or attempted assault of a staff member,[5] and the July 13, 2021 possession of a dangerous weapon described as a "6.75" sharpened metal weapon" discovered in his living quarters where he was the sole

---

[4] Miller admitted this infraction.
[5] Miller denied this infraction.

6

occupant.[6] Miller's conduct in the Bureau of Prisons evidences the continuing threat he poses to public safety.

Neither his programming nor other efforts while in custody change that conclusion. He claims to have "completed extensive rehabilitative coursework throughout more than a decade in prison", but his coursework record provided by both Miller and the Government is better described as run-of-the-mill. He claims to have completed the Challenge Program and the "threshold program through USP-Lee religious services" and to have taught music courses. He appears to have participated in and/or completed drug programs and has worked in various positions as an orderly and in the kitchen, dining room, recreation yard, and UNICOR, according to documents submitted by Miller and the Government. And he asserts that he has strengthened his family ties. These courses, programs, work experience, and family relationships will serve Miller well while in custody and upon his release. But they are far outweighed by the threat to public safety that Miller continues to pose.

In sum, even if Miller were found to have shown extraordinary and compelling reasons, which he has not, application of the factors from § 3553(a) foreclose relief.

---

[6] Miller denied this infraction.

For the reasons stated in this Memorandum, IT IS HEREBY ORDERED that Stephen Anthony Miller's pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Doc. #78] is DENIED.

IT IS FURTHER ORDERED that Stephen Anthony Miller's pro se Motion to Proceed and Grant [Doc. #81] is DENIED AS MOOT.

This the 13th day of September, 2022.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge